UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

v.

NASSAU COUNTY, et al.

                Defendants.
------------------------------------------------------------X
ALICE WOODSON WHITE, et. al.,

                Plaintiffs,

v.

NASSAU COUNTY POLICE DEPARTMENT, et al.,

                Defendants.
------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.

★ AUG 02 2004 ★

LONG ISLAND OFFICE

NOTICE OF APPEAL

CIVIL ACTION NO.: 77 CV 1881 (JS)

CIVIL ACTION NO.: 76 CV -1869 (JS)

Notice is hereby given that Kathleen Brennan, Susan J. Giannone, Esther Lidstrom, Jean Marcovecchio, Michele Meyer, Lorraine McIntyre, Ellen Stein, Barbara Stemmle, Doreen Triola and Kathleen Vedder, Putative Plaintiffs - USA Decree Beneficiaries in the above-captioned action, and Mary Ann Durkin, Plaintiff in the above-captioned action hereby appeal to the United States Court of Appeals for the Second Circuit from an Order, entered July 20, 2004, denying, on the grounds of laches, the motion to enforce the consent decree entered in the above-captioned matter.

Dated: August 2, 2004
      Jericho, New York

                              SLAVIN, ANGIULO & HOROWITZ, LLP

                By: _____
                      L. SUSAN SCELZO SLAVIN (LSS 1916)
                      Attorneys for Appellants, Kathleen Brennan, Mary
                      Ann Durkin, Susan J. Giannone, Esther Lidstrom,
                      Jean Marcovecchio, Michele Meyer, Lorraine
                      McIntyre, Ellen Stein, Barbara Stemmle, Doreen
                      Triola and Kathleen Vedder
                      350 Jericho Turnpike (Suite 101)
                      Jericho, New York 11753

TO: Tatum Fox, Esq.
Nassau County Attorney
Attorney for Defendants
One West Street
Mineola, New York 11501

Louis Lopez, Esq.
U.S. Department of Justice, Civil Rights Division
Attorney for the United States
601 D Street, N.W.
Washington, D.C. 20004

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,

                        Plaintiff,                ORDER
                                                  77-CV-1881(JS)
        -against-

NASSAU COUNTY, et al.,

                        Defendants.
----------------------------------------X
ALICE WOODSON WHITE, et al.,

                        Plaintiffs,
                                                  76-CV-1869(JS)
        -against-

NASSAU COUNTY POLICE DEPARTMENT,
et al.,

                        Defendants.
----------------------------------------X
```

Appearances:
For Plaintiffs           L. Susan Scelzo Slavin, Esq.
                         Slavin, Angiulo & Horowitz, LLP
                         350 Jericho Turnpike, Suite 101
                         Jericho, New York 11753

For Defendants           Nassau County Attorney
                         One West Street
                         Mineola, New York 11501
                             By: Bonnie Garone, Esq.

For the United States    U.S. Department of Justice,
                         Civil Rights Division
                         601 D Street, N.W.
                         Washington, DC 20004
                             By: John M. Gadzichowski, Esq.

SEYBERT, District Judge:

In accordance with the decision issued by the Second Circuit vacating and remanding this case, the Court ORDERED the parties on December 19, 2003, to submit written argument on the issues of (1) the equitable doctrine of laches and (2) the ripeness

of the claims of the USA Plaintiffs. For the reasons set forth below, this Court finds that the claims of the USA Plaintiffs are ripe for review and that the claims of all of the Plaintiffs are barred by the equitable doctrine of laches.

BACKGROUND

In 1982, two Consent Decrees were entered in two companion lawsuits against Nassau County, New York and related entities and officials. The Consent Decrees resolved <u>White v. Nassau County Police Dep't</u>, No. 76-C-1869 ("White Decree") and <u>United States v. Nassau County</u>, No. 77-C-1881 ("USA Decree").

In the first lawsuit, Alice Woodson White, Jacqui Harris Wilson, and Carol Ann Calami filed a Complaint on October 12, 1976, amended June 30, 1982, commencing an action against the Nassau County Police Department, the County Board of Supervisors and its Members, the Nassau County Civil Service Commission and its Members, the Nassau County Policemen's Benevolent Association, and the Municipal Police Training Council and its Members alleging unlawful discriminatory practices relating to employment, in violation of the Constitution and the Civil Rights Laws of the United States and of the State of New York. (the "White Action"). The plaintiffs in the White Action alleged that the named defendants maintained and continued to maintain a pattern, practice, custom and policy of discrimination against women applicants and employees, and of limiting, segregating and classifying employees so as to deprive women of employment

2

opportunities, benefits, and terms and conditions of employment equal with men. By Order dated May 16, 1977, the court certified that the action may proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2). Plaintiffs Mary Ann Durkin ("Durkin") and Karen Ryan ("Ryan") were members of the certified class. The White Action was settled and the White Decree was entered in or about August 1982.

According to the terms and conditions of the White Decree, Nassau County agreed (1) to refrain from engaging in gender discrimination or retaliation; (2) to pay class members stipulated sums; and (3) to reinstate Durkin, who had left her job as a police officer in 1971 after being denied extended maternity leave, effective August 20, 1982.

In the second lawsuit, the United States filed an action on September 21, 1977 against Nassau County, the Commissioner of Police, and the Nassau County Civil Service Commissioners alleging that Nassau County was engaged in a pattern or practice of employment discrimination against blacks, Hispanics, and females with respect to job opportunities in the Nassau County Police Department, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; the State and Local Fiscal Assistance Act of 1972, as amended, 31 U.S.C. § 3766(c)(3); and the Fourteenth Amendment of the Constitution of the United States (the "United States Action"). The United States Action was settled and the USA Decree was entered in or about April 1982.

3

According to the terms and conditions of the USA Decree, Nassau County was obligated to (1) ensure that females were considered for employment on an equal basis with white males; and (2) correct the present effects of Nassau County's alleged prior discrimination employment practices. In addition, the USA Decree provided for relief to all Policewoman or Police Cadet applicants (1) who sat for the March 18, 1972 qualifying exam and scored higher than the lowest general average score of any male who was subsequently appointed to Police Patrolmen or Police Cadet, and (2) who were prevented from taking the Police Patrolman or Police Cadet exam because of their gender. Relief included (1) "back pay" to compensate applicants for monetary loss incurred; (2) appointment to those persons who desired to be considered for appointment and had successfully completed the required training; and (3) that each appointee receive all of the "emoluments of the rank of Police Officer, including retroactive seniority, for all purposes (except pension and time-in-grade for eligibility for promotion)."

On July 26, 2002, a motion to compel the Defendants to comply with the terms of both Consent Decrees was brought before this Court on behalf of Durkin and Ryan, as beneficiaries of the White Decree, and a number of the beneficiaries of the USA Decree. In particular, ten beneficiaries of the USA Decree ("USA Beneficiaries"), alleged that Defendants failed to provide them with (1) accumulated vacation, sick leave, personal days and

4

compensation for the period of time after their retroactive seniority date and prior to their appointment date; (2) separation pay for accrued vacation days, sick days and compensatory time, and one week's pay for each year of service between their retroactive seniority date and their appointment date; and (3) credits for years of service in their retirement system between their retroactive seniority date and their appointment date. In addition, Durkin made similar claims pertaining to the White Decree. Durkin alleged that Nassau County failed to (1) credit her with accumulated vacation, sick, and personal days for the years of her involuntary separation; (2) pay her one week's pay for each year of service after she retired in 2000 beginning July 5, 1968; and (3) allow her to participate in the "1/60th Rule"[1] retirement program.

On October 11, 2002 the Court held a hearing and on December 17, 2002 issued an order denying the motion. The Court found that the claims had accrued when the officers were reinstated[2] and when the benefits sought were not credited to them,[3]

---

[1] Section 384-E of the New York State and Local Police and Fire Retirement System which provides for an "additional pension of 1/60th (1.66%) of a covered employee's final average salary for each completed year of creditable service beyond 20 years." See County Defs. Mem. of Law in Resp. to the Court's Dec. 19, 2003 Order at n.8.

[2] Durkin was recalled effective August 20, 1982. The USA Beneficiaries were appointed to the Police Department in 1984.

[3] The Court also noted that some of the Plaintiffs began pursuing this claim nearly twenty years ago and failed to take

5

and that, therefore, the claims were barred by New York's six year statute of limitations applicable to contract actions. The Court also noted that there was serious doubt as to whether the USA Beneficiaries had standing to bring the motion since they were not parties to the action and they did not make a motion to intervene.

On appeal, the Second Circuit remanded the case back to this Court. See Brennan v. Nassau County, 352 F.3d 60 (2d Cir. 2003). On December 19, 2003, in accordance with the Second Circuit's decision, the Court ORDERED the parties to submit written argument on the issues of (1) the equitable doctrine of laches and (2) the ripeness of the claims of the USA Beneficiaries.

DISCUSSION

Laches

"Laches is 'an equitable defense based on the maxim vigilantibus non dormientibus aequitas subvenit (equity aids the vigilant, not those who sleep on their rights).'" Ivani Contracting Corp. v. New York, 103 F.3d 257, 259 (2d Cir. 1997)(quoting Stone v. Williams, 873 F.2d 620, 623 (2d Cir. 1989)). The defense bars a plaintiff's equitable claim "where he is 'guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" Id. (quoting Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir. 1979)). "Although Laches is an equitable defense, employed instead of a statutory time-bar, analogous

---

any court action until the filing of this motion.

6

statutes of limitation remain an important determinant in the application of a laches defense. . . . That statute of limitations then determines which party possesses the burden of proving or rebutting the defense." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996); see also Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S. Ct. 582, 90 L. Ed. 743 (1946) ("[S]tatutes of limitation . . . have been drawn upon by equity solely for the light they may shed in determining . . . whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair."). The burden is on the defendant to prove the defense prior to the running of the analogous state statute of limitations, however, "once the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case." Conopco, 95 F.3d at 191.

The Court of Appeals held that Durkin's claims were subject to the equitable doctrine of laches because "consent decrees are subject to equitable defenses and not legal defenses such as the statute of limitations." Brennen, 352 F.3d at 63. As such, this Court now applies that doctrine to Durkin's claims, and the most analogous state statute of limitations will provide a guideline to determine whether Durkin slept on her rights. This Court determined by Order dated December 17, 2002, that this action was most analogous to a breach of contract action, and that, therefore, New York's six year limitation on contract actions is the applicable

7

is seeking in the instant motion. See Durkin Aff. ¶ 17. In addition, Durkin was aware at the inception of the White Decree in 1982 that it excluded pension and retirement benefits. Paragraph 7(b) of the White Decree specifically states that "Durkin . . . have [her] original seniority date for all purposes <u>except pension and retirement</u> but the retirement plan Durkin and Ryan were in as of their original appointment date will control the terms of their retirement." See Durkin Aff. ¶ 7 (emphasis added). Furthermore, after Durkin contacted her attorney Mr. Bennia, he wrote a letter dated August 19, 1983, stating that Durkin was not reinstated to the appropriate retirement plan as required by the White Decree and her accumulated sick, vacation, and personal leave had not been received. See Durkin Aff. ¶ 19. Therefore, the evidence clearly indicates that Durkin had knowledge of the alleged misconduct in 1982 or shortly thereafter. Durkin's delay in seeking the benefits allegedly required by the White Decree is unreasonable and inexcusable. Durkin's Affidavit clearly demonstrates that she had knowledge of the alleged misconduct upon her reinstatement in 1982 or shortly thereafter, and despite that knowledge, Durkin failed to offer a sufficient excuse for the delay in brining any court action until now. This is not a case where Plaintiff has been prevented from asserting her rights because of "justified ignorance of the facts constituting a cause of action, disability, or because of ongoing settlement negotiations." <u>Stone v. Williams</u>, 873 F.2d 620, 625 (2d Cir. 1989). Defendants have been prejudiced by Durkin's

unreasonable delay in bringing this action because, with the passage of two decades, there is a "decreased ability of the defendants to vindicate themselves" resulting from "fading memories or stale evidence." Id. For all of these reasons, the Court finds that Durkin's claims are barred by the equitable doctrine of laches.

Ripeness

"A dispute is ripe for adjudication when there is 'a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. N.Y. State Dep't of Envtl. Conservation, 79 F.3d 1298, 1305 (2d Cir. 1996) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979). "The purpose [of the ripeness doctrine] . . . 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreement over administrative policies, and also to protect those agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties.'" Able v. United States of America, 88 F.3d 1280, 1289 (2d Cir. 1996)(quoting Abbott Lab. v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)).

The Court of Appeals found that the USA Beneficiaries "are clearly among the group 'who consented to and accepted the relief

10

provided' in the decree," therefore, the USA Beneficiaries have standing to sue. Brennan, 352 F.3d at 65. However, whether the "claims are ripe for review is a separate inquiry . . ." and it must be determined whether the USA Beneficiaries "have suffered 'an injury in fact.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

This Court finds that the USA Beneficiaries' claims have been ripe for review since their appointment to the Police Department in 1984. They suffered an "injury in fact," i.e. "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical,"'" when the alleged breach of the USA Decree occurred in 1984. Lujan, 504 U.S. at 560 (citations omitted). This is not a case where the Court is "entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur. . . ." N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 326 (2d Cir. 2003) (internal quotations omitted).

Since the date of the USA Beneficiaries' appointment, they have been denied (1) accumulated vacation, sick leave, personal days and compensation for the period of time after their retroactive seniority date and prior to their appointment date; (2) separation pay for accrued vacation days, sick days and compensatory time, and one week's pay for each year of service between their retroactive

seniority date and their appointment date; and (3) credits for years of service in their retirement system between their retroactive seniority date and their appointment date." The decision to deny these benefits was finalized in 1984 and has been a concrete injury since that time. These injuries are not of the kind that will not become concrete or definite until the USA Beneficiaries separate from service. As such, these claims are, and have been since 1984, ripe for review.

Having determined that the USA beneficiaries' claims are ripe for review and have been ripe since their appointment to the Police Department in 1984, the Court finds that the claims are barred by the equitable doctrine of laches.

The equitable doctrine of laches, as more fully discussed above, bars a plaintiff's equitable claim "where he is 'guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" Ivani, 103 F.3d at 259 (quoting Goodman, 606 F.2d at 804). "A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's mis-conduct; (2) the plaintiff inexcusably delayed taking action; and (3) the defendant was prejudiced by the delay." Ikelionwu, 150 F.3d at 237.

The USA Beneficiaries have had knowledge of Nassau County's alleged misconduct since 1984. As part of the USA Decree, Nassau County was required to provide each of the USA Beneficiaries "with a notification which summarizes the relief to which she is entitled pursuant to th[e] Decree and which requests that she advise

12

the County as to whether she desires to be considered for an appointment as a Police Officer in the NCPD." Consent Decree ¶ 59(a), attached as Ex. A to the Affirmation of Susan Scalzo Slavin, Esq., dated July 18, 2002. The USA Decree required that the notification to each of the females "shall be made in writing, approved as to both substance and form by the United States, accompanied by a copy of this Decree and forwarded by U.S. mail . . . as to the entitlement of these females to relief. . . ." <u>Id.</u> at ¶ 46(b). In addition, the USA Beneficiaries acknowledged in their Memorandum of Law that "within a year after they reported to the Police Academy, beneficiaries of the USA Consent Decree requested that the County comply with its obligation under the Consent Decree." Pls-Movants' Mem. of Law p. 12. The failure of the USA Beneficiaries to seek judicial relief until now is unreasonable and inexcusable. They have failed to provide the Court with a sufficient excuse for the delay and, as a result of the unreasonable delay in bringing action, Nassau County has been prejudiced. The Court finds that the USA Beneficiaries had knowledge of the alleged misconduct in 1984, have inexcusably delayed taking court action, and have prejudiced Nassau County with such an unreasonable delay, therefore, their claims are barred by the equitable doctrine of laches.

CONCLUSION

    For the reasons set forth above, this Court finds that the USA Beneficiaries' claims are ripe for review. The Court further

13

finds that Durkin's and the USA Beneficiaries' claims are barred by the equitable doctrine of laches. As such, the motion to compel is again DENIED. The Clerk of the Court shall mark this case CLOSED.

SO ORDERED

Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         July 20, 2004